On the trial of this ejectment in Smith County, March term, 1817, the plaintiff produced a grant dated the 28th of August, 1815, to himself, also this entry: "A. Stubblefield, 175 acres in Smith county, on the dry fork of Goose Creek. Beginning in Willis Curling's east boundary line, running east and south for complement, including an improvement made by Benjamin Ellis, 12th June, 1812." The defendant was found to be in possession. The plaintiff's survey, as made, included the improvement made by Benjamin Ellis, the place where the defendant lived.
The defendant read a grant from this State to him of a prior date to that of the plaintiff's grant; but his entry was of a later date than the plaintiff's entry, though prior to the plaintiff's survey.
The defendant read Curling's entry, and one in the name of Howell Tatum for 176 acres, Willis Curling's entry called to adjoin Howell Tatum's on the east, to run up the creek for complement, c., so as to include the place where John Lamb lived. Beginning at Willis Curling's entry, on the east boundary of Howell Tatum's and running so as to include the place where John Lamb lived, and then begin the plaintiff's entry on what would be the east boundary of Willis Curling's survey, it could not include the improvement made by Benjamin Ellis, the place where the defendant lived. There is an old line in the neighborhood some distance east of the east boundary of Howell Tatum's entry, which at and before the date of the plaintiff's entry, was generally called and considered by the neighborhood to be Howell Tatum's *Page 266 
line; but turned out to be Fenner's and Montflorence's line of an old grant. Begin the survey of Curling's entry on that line and run the same agreeably to the entry; and then begin the survey of the plaintiff's entry on what would be the east boundary of Curling's, according to that survey, and run the plaintiff's entry according to its calls, the improvement made by Benjamin Ellis, being the place where the defendant lived, would be included. But survey Curling's entry from that place as the beginning it would not include the place where Lamb lived, and would be 145 poles from Tatum's entry. It was not proved that either Curling's or Tatum's entry were surveyed before the date of the plaintiff's entry. There was no east boundary line, which had been surveyed and marked, for Willis Curling's entry, at the date of the plaintiff's entry; nor did it appear to have been surveyed until the plaintiff had his entry surveyed. The plaintiff had Curling's entry run out at the time his was surveyed. The improvement made by Benjamin Ellis was known in the neighborhood at the date of the plaintiff's entry. The Court instructed the jury, that, as the plaintiff's entry called to begin on the east boundary of Willis Curling's line, he must make that the place of his beginning wherever it should be established. That if by beginning there and running it agreeably to the calls, the improvement made by Ellis would not be included, that call in the entry was to be disregarded. That the circumstance of an older line in the neighborhood having the reputation of Howell Tatum's line ought not to be taken into view as affording evidence of the specialty of the plaintiff's entry, as the entry did not call to adjoin Tatum's line, but Curling's east boundary. These directions were excepted to.
The error assigned is in the refusal of the Circuit Court judge to grant a new trial; secondly, for his misdirection to the jury. *Page 267 
Curling's entry is in these word's: "Willis Curling, in Smith county on the north side of Cumberland river on the dry fork of Goose Creek, beginning on the east boundary line of a tract of 176 acres, now claimed by Howell Tatum, and to run up the creek on both sides for complement, so as to include where John Lamb now lives, 1801, April 23. Howell Tatum's entry is in these words: "Howell Tatum of originally the heirs of Thomas Epers, in Smith county, to lie on both sides of the dry fork of the east fork of Goose Creek, beginning on the north side of said fork south of Elias Fort's south-west corner, and running in an oblong up both sides of said fork. This is in lieu of a former warrant to him by older surveys and of a tract granted to said Tatum by virtue of the same warrant, dated 1801, February the 17th, number of acres 176."
Upon this statement, after hearing the cause argued by counsel, we now proceed to give judgment. And two of us think that the chief question is, where shall Stubblefield begin: at Curling's east boundary by a survey, beginning on the reputed east boundary of Tatum's entry, or on that which is to be found by a survey beginning on the east boundary of Tatum to be ascertained by an actual survey of Tatum's entry? The construction of an entry is to be guided by common sense and the common acceptation of words. Our sole object must be to attain its true meaning. To do this we must, if possible, make every word take effect. If there, be several calls, and one place will fit all of them, and another place will fit some only, then it is reasonable to fix upon the former. If a place will fit several, but not all of the calls, it is reasonable to adhere to those which are the most permanent. Where no natural object is called for, and the objects are all artificial, then fix upon that place which is pointed out by the most visible and immutable objects. Here every call concentrates in *Page 268 
the plaintiff's survey; it extends from the first-mentioned east boundary of Curling, and includes the improvement of Ellis. Begin at the last east boundary before mentioned and the improvement of Ellis will not be included. If some call must be rejected, it ought not to be the improvement; for that is a principal call. It is in most cases specially aimed at; and when settled on before the conflicting entry commences, in general, is better known than lines. If, however, the improvement were out of the way, a line dependent on a reputed line ought rather to be adhered to than one dependent on a line to be ascertained by a survey to be made at a future time; for it may never be made, or, when made, may be advanced or withdrawn, and placed on any point between the extremities of an oblong and square. A union of calls leads to the lands claimed by the plaintiff; so does the most visible and palpable line, if the lines alone were to govern the decision. Curling's entry is to include Lamb's improvement. Therefore, when surveyed, it should begin at the real reputed line, whichever of them will best lead to that result. So likewise, in the case of Stubblefield's entry, it must begin on the line which will best answer the purpose of including Ellis's improvement. And that is the line dependent on the reputed east line of Tatum's tract. For these reasons there ought to be a new trial.